IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 6:12-cr-00214

GARY WAYNE POWERS

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Gary Powers's objections to Standard Condition (a)(3) and Optional Condition (b)(3) of Probation and Supervised Release in all Sex Offense Cases. Defendant Powers is not objecting to any of the other standard and optional conditions of release, so the court will address only these two conditions. I will impose the conditions at the final revocation hearing on March 19, 2020. For the reasons stated herein, the objections are **SUSTAINED**.

I. Background

On May 17, 2005, Mr. Powers was sentenced to a term of imprisonment of 128 months followed by a 120 months of supervised release for *using an interstate facility to entice a minor for the purpose of sexual activity* in violation of 18 U.S.C. § 2422(b) (Count 1), and *interstate travel with the intent to engage in a sexual act* in violation of 18 U.S.C. § 2241(c) (Count 2). Mr. Powers was released from custody on July 8, 2011 and began serving his term of supervised release on that date. On January 29,

2020, I revoked Mr. Powers's supervised release and imposed a sentence of 3 months imprisonment on Count One and Count Two to run concurrently followed by 60 months of supervised release.

At the Supervised Release Revocation Hearing, Mr. Powers objected to two of the Standard and Optional Conditions of Probation and Supervised Release in all Sex Offense Cases which will be imposed on Mr. Powers upon his release from prison. Both parties agree that Standard Condition (a)1 and Optional Conditions (b)5, (b)6 and (b)7 are not necessary. There is no objection to Standard Conditions (a)2,[1] (a)4, or (a)5 and Optional Conditions (b)1, (b)2, (b)4, and (b)8–15. The only objections are to Standard Condition (a)3 and Optional Condition (b)3.

## II. Legal Standard

"District courts have broad latitude to impose conditions on supervised release." *United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003). "In addition to a number of mandatory conditions, *see* 18 U.S.C. § 3583(d), the sentencing court may impose any other condition it considers to be appropriate, as long as that condition is 'reasonably related' to statutory factors referred to in § 3583(d)(1)." *Id.* "The statutory factors to which any special condition must reasonably relate are: the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the need to provide deterrence and to protect the public from

---

[1] Although Mr. Powers does not object to this condition, he asks for judicial review of any proposed course of treatment selected for him, which is already included in the condition.

additional crimes, *see id.* §§ 3553(a)(2)(B) & (C); and the need to provide the defendant with any necessary training, medical care, or treatment, *see id.* § 3553(a)(2)(D)." *United States v. Wroblewski*, 781 F. App'x 158, 161–62 (4th Cir. 2019) (internal quotations removed). Importantly, the conditions I impose must involve "no greater deprivation of liberty than is reasonably necessary to serve these purposes, 18 U.S.C. § 3583(d)(2), and must be consistent with the policy statements governing supervised release issued by the Sentencing Commission, *see id.* § 3583(d)(3)." *Id.* (internal quotations removed). "A special condition of supervised release may restrict fundamental rights when the special condition is narrowly tailored and is directly related to deterring the defendant and protecting the public." *United States v. Henson*, 22 F. App'x 107, 112 (4th Cir. 2001) (internal quotations removed).

Additionally, I "must adequately explain any special conditions of supervised release." *United States v. Arbaugh*, No. 18-4575, 2020 WL 826450, at *8 (4th Cir. Feb. 20, 2020). "As with a term of imprisonment, the imposition of supervised-release conditions must be based on an individualized assessment of the defendant and the factors listed [in 18 U.S.C. § 3553]." *Wroblewski*, 781 F. App'x at 162.

### III. Discussion

#### (a) Optional Condition (b)(3)

I will begin with Mr. Powers's objection to Optional Condition (b)(3), which states the following:

3

> The defendant must not view or possess any "visual depiction" (as defined in 18 U.S.C. § 2256) including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of "sexually explicit conduct" (as defined in 18 U.S.C. § 2256), for the purpose of sexual gratification.

Mr. Powers argues this condition is overbroad, unduly vague, and more restrictive than necessary to satisfy any of the objectives set forth in § 3583(d)(1).

### 1) Constitutional Concerns

Although individuals on supervised release are subject to limitations on their constitutional liberties, such conditions must be narrowly tailored and not infringe upon their liberty more than is reasonably necessary under § 3582(d)(2). *See Henson*, 22 F. App'x at 112; *Wroblewski*, 781 F. App'x at 161–62.

#### a) Overbroad

The First Amendment protects non-obscene, adult pornography and sexually oriented expression. *See e.g.*, *New York v. Ferber*, 458 U.S. 747, 764 (1982); *Miller v. California*, 413 U.S. 15, 36–37 (1973); *United States v. Taylor*, 796 F.3d 788, 793 (7th Cir. 2015) ("Adult pornography, unlike child pornography, enjoys First Amendment protection, and so we must be especially cautious when considering a ban on possessing adult pornography."); *United States v. Wilson*, 565 F.3d 1059, 1067 (8th Cir. 2009) ("…the First Amendment protects non-obscene adult pornography."). Yet, Optional Condition (b)(3) cites 18 U.S.C. § 2256, the federal statute criminalizing possession and distribution of child pornography, to define "sexually explicit

4

conduct."[2] Under the statute's broad definition, serious First Amendment concerns arise because the condition "does not simply bar access to obscene material or child pornography (which is not protected by the First Amendment), but instead bars [Defendant] from all visual depictions of sex acts, whether obscene or not." *Wroblewski*, 781 F. App'x at 162. "Visual depictions of sex, of course, are extremely common in art, television, and movies." *Id.* As courts have recognized, a condition this broad covers popular movies and TV shows, such as Emmy award winning HBO fantasy series, Game of Thrones, watched by millions of Americans[3] and famous for "the many and varied scenes...that play out against a backdrop of sex and nudity." Michael Hann, *How 'Sexposition' Fleshes Out the Story*, The Guardian (March 11, 2012), https://www.theguardian.com/tv-and-radio/2012/mar/11/sexposition-story-tv-drama. "Applied literally, the language of the condition would prevent [Defendant] from viewing Oscar-winning films like *American Beauty* and *Brokeback Mountain,* television shows like *The Wire,* or sexually explicit works of art that appear in museums; yet such non-pornographic materials receive full protection

---

[2] 18 U.S.C. § 2256(A) defines "sexually explicit conduct" as "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals, or pubic area of any person."

[3] "The final episode of 'Game of Thrones' brought in a series record of 19.3 million viewers." Frank Pallotta, *'Game of Thrones' finale sets new viewership record*, CNN (May 20, 2019), https://www.cnn.com/2019/05/20/media/game-of-thrones-finale-ratings/index.html.

under the First Amendment." *United States v. Gnirke*, 775 F.3d 1155, 1165 (9th Cir. 2015).[4]

"If the First Amendment means anything, it means that a State has no business telling a man [or woman], sitting alone in his [or her] own house, what books he [or she] may read or what films he [or she] may watch." *Stanley v. Georgia*, 394 U.S. 557, 565 (1969). I am concerned by the puritanical rigidity and over-broadness of Optional Condition (b)(3). Further, the condition restricts Mr. Powers's liberty more than is necessary and is not narrowly tailored. *See Henson*, 22 F. App'x at 112; *Wroblewski*, 781 F. App'x at 161–62.

### b) Vagueness

In addition, I have grave concerns about the vagueness of the phrase "for the purpose of sexual gratification" as written in Optional Condition (b)(3).

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *United States v. Lanning*, 723 F.3d 476, 482 (4th Cir. 2013).

---

[4] The Third Circuit has also stated concerns about applying the child pornography statute to adult pornography in conditions of release. *See United States v. Loy*, 237 F.3d 251, 263 (3d Cir. 2001) ("Although federal law contains a definition of child pornography, see 18 U.S.C. § 2256, the release condition imposed here cannot be presumed to track that statute, as the condition explicitly prohibits 'legal adult pornography.'").

6

The phrase "for the purpose of sexual gratification" is completely undefined. Mr. Powers argues "[i]t is unclear whether the person must actually masturbate while viewing the materials or if simply viewing the materials to get aroused violates this condition." Def.'s Mem. [ECF No. 31] 9. The condition risks that Mr. Powers will be unable to determine what conduct constitutes a violation of the condition. *See United States v. Williams*, 553 U.S. 285, 306 (2008) ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.").

More disturbingly, the condition states that the defendant is only in violation of the condition if he "view[s] or possess[es] any 'visual depiction'…of 'sexually explicit conduct'… *for the purpose* of sexual gratification." *See* Optional Condition b(3) (emphasis added). The condition permits Mr. Powers to be punished based on his motive for watching or possessing sexually explicit materials. That is, he may be punished for his mindful purpose and his thinking rather than his conduct.

"Our whole constitutional heritage rebels at the thought of giving government the power to control [people's] minds," *Stanley*, 394 U.S. at 565. In our legal system, we punish actions, and "the government cannot regulate mere thought, unaccompanied by conduct." *See Doe v. City of Lafayette, Ind.*, 377 F.3d 757, 765 (7th Cir. 2004) (citing *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 67–68 (1973)). Simply because "society may find speech offensive is not a sufficient reason for suppressing

7

it." *United States v. Whorley*, 550 F.3d 326, 343 (4th Cir. 2008) (Gregory, J. concurring in part and dissenting in part) (quoting *FCC v. Pacifica Foundation*, 438 U.S. 726, 745 (1978)).[5]

Actions are distinct from fantasies of illegal conduct. *See id.* at 350 (Gregory, J. concurring in part and dissenting in part) ("[Defendant's] actions can easily be separated from the potentially illegal acts about which he fantasized."). As commentators have noted, "a sexual attraction to unlawful activities and related fantasies are distinct from intent to actually break the law by engaging in those activities." Andrew Gilden, *Punishing Sexual Fantasy*, 58 Wm. & Mary L. Rev. 419, 461–62 (2016); *see also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) ("[T]he Court's First Amendment cases draw vital distinctions between words and deeds, between ideas and conduct."). The condition as written presents a grave risk of impermissible punishment for Mr. Powers's thoughts as opposed to his actions.

In practice, a violation could well depend upon what the probation officer believes is possessed or viewed for the purpose of sexual gratification. "A condition with no core meaning…cannot be cured by allowing the probation officer an unfettered power of interpretation, as this would create one of the very problems against which the vagueness doctrine is meant to protect..." *United States v. Loy*, 237 F.3d 251, 266 (3d Cir. 2001). Furthermore, "without a more definitive standard to

---

[5] In Judge Gregory's dissent, he noted that some of the most highly regarded books and movies, including Lolita and American Beauty, delve extensively into unlawful sexual fantasies. *See United States v. Whorley*, 550 F.3d 326, 349 (4th Cir. 2008) (Gregory, J. concurring in part and dissenting in part).

guide the probation officer's discretion, there is a real danger that the prohibition on pornography may ultimately translate to a prohibition on whatever the officer personally finds titillating." *Id.*

### 2) Individualized Assessment of Mr. Powers

Although I am troubled by the constitutional implications of Optional Condition (b)(3), the court need not reject the condition on that basis because in this case, there is insufficient evidence that sexually explicit materials contributed to Mr. Powers's offenses or will cause him to reoffend in the future.

As stated earlier, I have broad discretion to impose conditions of supervised release. I also must individually assess any conditions I impose on the defendant and adequately explain them. *See Wroblewski*, 781 F. App'x at 162. Importantly, the condition must be reasonably related to the offense and involve no greater deprivation of liberty than necessary. *See id.* "[T]he mere fact that the condition is described in local court rules as a 'standard' condition is insufficient," and a court may not categorically impose the same conditions in all sex crimes without looking at the specific facts of each case. *Id.* Notably, the condition must be based on more than a generalized, hypothetical connection to the alleged offense. *See id.* at 163 ("There is nothing in the record indicating that pornography or sexually explicit material played any role in [Defendant's] behavior…"); *United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009) (vacating special conditions of supervised release because the district court "offered no explanation as to their necessity in [Defendant's] case").

9

Here, the government argues this condition is necessary because of the defendant's sexual offenses, "the correlation between pornography consumption and sexual recidivism," and the defendant's "serious sexual preoccupation," which "is related to increased risk." Gov't Resp. [ECF No. 32] 5. Yet, the government offers no specific facts as to how viewing sexually explicit materials played a role in Mr. Powers's behavior. The government also fails to demonstrate how banning pornography would make Mr. Powers less likely to reoffend, other than making the type of generalized, hypothetical connections between pornography and sexual recidivism which the Fourth Circuit has forbidden as a reason to impose conditions of release. *See Wroblewski*, 781 F. App'x at 163. In fact, some commentators have found no correlation between watching pornography and sex crimes. *See* Laura A. Napoli, *Demystifying "Pornography": Tailoring Special Release Conditions Concerning Pornography and Sexually Oriented Expression*, 11 U.N.H.L. Rev. 69, 84–85 (2013) ("[T]he evidence linking pornography to sexual assault is questionable at best.").[6]

---

[6] In fact, others have suggested "that looking at pornography may actually make a person less likely to engage in sexual assault." Laura A. Napoli, *Demystifying "Pornography": Tailoring Special Release Conditions Concerning Pornography and Sexually Oriented Expression*, 11 U.N.H.L. Rev. 69, 95 (2013) (citing Steve Chapman, *Is Pornography a Catalyst of Sexual Violence?*, REASON.COM (Nov. 5, 2007), http://reason.com/archives/2007/11/05/is-pornography-a-catalyst-of-s); *see also* Michael Castleman M.A., *Evidence Mounts: More Porn, Less Sexual Assault*, PSYCHOLOGY TODAY (Jan. 14, 2016), https://www.psychologytoday.com/us/blog/all-about-sex/201601/evidence-mounts-more-porn-less-sexual-assault.

Other circuits have vacated conditions banning sexually explicit materials where there was not a sufficient nexus with the offense. *See United States v. Goodwin*, 717 F.3d 511, 524 (7th Cir. 2013) ("[T]here is nothing in the record that sheds light on a hypothetical connection between [Defendant's] 1994 [sex crime] conviction or other past acts" and material that "depicts or alludes to sexual activity."); *United States v. Voelker,* 489 F.3d 139, 151 (3d Cir. 2007) ("[N]othing on this record suggests that sexually explicit material involving only adults contributed in any way to [Defendant's] offense, nor is there reason to believe that viewing such material could cause [Defendant] to reoffend."); *United States v. Perazza–Mercado*, 553 F.3d 65, 76 (1st Cir. 2009) ("[T]he imposition of the ban on the possession of adult pornography as a condition of supervised release, without any explanation and without any apparent basis in the record for the condition, constitutes an error that is plain.").

In considering the 18 U.S.C. § 3553 factors to which any special condition must reasonably relate, I cannot impose the Optional Condition (b)(3) here because there is insufficient evidence showing a reasonable relation between the offense and the condition and the likelihood this condition would prevent Mr. Powers's from reoffending. The government has not demonstrated deterrence or protection of the public. Therefore, the objection is **SUSTAINED** as to Optional Condition (b)(3).

### b) Standard Condition (a)(3)

The next condition Mr. Powers objects to is Standard Condition (a)(3). Standard Condition (a)(3) states the following:

> The defendant shall submit to risk assessments, psychological and physiological testing, which may include, but is not limited to, a polygraph examination or other specific tests to monitor the defendant's compliance with probation or supervised release treatment conditions, at the direction of the probation officer.

Mr. Powers argues the condition "should be amended to include a provision that provides that Mr. Powers does not forfeit his right to be free from self-incrimination during any psychological or physiological testing, including polygraph examinations." Def.'s Mem. [ECF No. 31] 8.

The Fifth Amendment's Self-Incrimination Clause provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. If the Fifth Amendment privilege is violated, the coerced statements cannot be used in a criminal trial. *United States v. Riley*, 920 F.3d 200, 205 (4th Cir. 2019). Indeed, "mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness." *Id.* (quoting *Chavez v. Martinez*, 538 U.S. 760, 769 (2003)). Though an individual on supervised release does not lose his Fifth Amendment protection against self-incrimination, the privilege does not apply in the context of supervised release revocation proceedings because they "are not criminal proceedings" and "are not considered part of a criminal prosecution." *See id.*; *see also*

12

*Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) ("A defendant does not lose this protection by reason of his conviction of a crime; notwithstanding that a defendant is imprisoned or on probation at the time he makes incriminating statements, if those statements are compelled they are inadmissible in a subsequent trial for a crime other than that for which he has been convicted."); *see also Murphy*, 465 U.S. at 435 n.7 ("Just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer"); *Murphy*, 465 U.S. at 441 (Marshall, J., dissenting) ("[B]ecause probation revocation proceedings are not criminal in nature and because the Fifth Amendment ban on compelled self-incrimination applies only to criminal proceedings, the possibility that a truthful answer to a question might result in the revocation of his probation does not accord the probationer a constitutional right to refuse to respond." (citation omitted)).

Generally, the Fifth Amendment privilege is not self-executing, and a person "must assert the privilege rather than answer." *Riley*, 920 F.3d at 204. Otherwise, the statements are not considered coerced. Exceptions arise in situations viewed as inherently coercive, such as custodial police interrogations or penalty cases, "where the assertion of the privilege results in the imposition of a penalty substantial enough to effectively foreclose a free choice to remain silent." *Id.*

Courts have found that the use of a polygraph on a defendant on supervised release is a penalty situation. Generally, a probationer does not need to be given

13

Miranda warnings if the defendant is "not under arrest and free to leave at the end of the meeting." *Id.* at 206. However, if a State "threat[ens] to revoke probation for the legitimate exercise of the Fifth Amendment privilege," then the interview has become an inherently coercive, penalty situation, which "effectively foreclose[s] a free choice to remain silent." *Id.* at 204; *see United States v. Bahr,* 730 F.3d 963, 966 (9th Cir. 2013) ("When the government conditions continued supervised release on compliance with a treatment program requiring full disclosure of past sexual misconduct, with no provision of immunity for disclosed conduct, it unconstitutionally compels self-incrimination."); *United States v. Von Behren*, 822 F.3d 1139, 1150 (10th Cir. 2016) ("*Murphy* makes this case an easy one. It recognizes that a threat to revoke one's probation for properly invoking his Fifth Amendment privilege is the type of compulsion the state may not constitutionally impose."); *see also Murphy*, 465 U.S. at 438.

Because of the inherent Fifth Amendment risks involved when requiring a defendant on supervised release to participate in polygraph testing or risk revoking supervised release, courts have construed two solutions. First, courts can provide defendants use immunity from future prosecutions based on what the defendant says during polygraph examinations. *See Murphy*, 465 U.S. at 435 n. 7 ("[A] state may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers

14

may not be used in a criminal proceeding and thus eliminates the threat of incrimination."); *Bahr*, 730 F.3d at 966.

Second, courts can provide a Fifth Amendment warning written into the condition itself. *See United States v. York*, 357 F.3d 14, 25 (1st Cir. 2004) ("Sensitive to Fifth Amendment issues, the district court inserted a caveat in its order: 'When submitting to a polygraph exam, the defendant does not give up his Fifth Amendment rights…,'" meaning the defendant's "supervised release will not be revoked based on his refusal to answer polygraph questions on valid Fifth Amendment grounds."); *United States v. Jennings*, 652 F.3d 290, 293 (2d Cir. 2011) (upholding a Special Condition of Supervision which states in part "The defendant shall answer the questions posed during the polygraph examination, subject to his right to challenge in a court of law the use of such statements as violations of the defendant's Fifth Amendment rights"). Though courts can use the coerced statements against the defendant in a revocation proceeding, this ensures supervised release is not revoked based on a refusal to answers a question under Fifth Amendment grounds.

In this case, Mr. Powers is required "to be completely honest" in his Sex Offender Treatment Contract between Dayspring Counseling Center, Inc. and Mr. Powers. Ex. 2 [ECF No. 31] 1. The Contract also provides that "3 consecutive polygraph exam failures…will result in termination of treatment." *Id.* at 3. If Mr. Powers does not participate in his treatment, he could be in violation of Standard Condition (a)(2), which requires Mr. Powers to complete all treatment

recommendations. The consequence of the Sex Offender Contract is that Mr. Powers has no choice but to truthfully answer all questions during the polygraph examination or face the penalty of having his supervised release revoked. The condition does not provide use immunity for statements made for criminal trials, nor does the condition provide that Mr. Powers retains his Fifth Amendment privilege not to answer incriminating questions. Therefore, Standard Condition (a)(3) unconstitutionally infringes upon Mr. Powers's Fifth Amendment privilege against self-incrimination. *See Murphy*, 465 U.S. at 438; *Riley*, 920 F.3d at 204; *see also Bahr*, 730 F.3d at 965. Accordingly, I **SUSTAIN** the objection to Standard Condition (a)(3). The court will rewrite the condition at the upcoming final revocation hearing, taking into consideration my reasoning stated above.

## IV. Conclusion

For the foregoing reasons, Defendant Powers's objections to Standard Condition (a)(3) and Optional Condition (b)(3) are **SUSTAINED**. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: March 5, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE